# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO.: 5:11CV19-RLV

| | |
|---|---|
| FREDERICK L. BLUE, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>APPALACHIAN STATE UNIVERSITY )<br>and CALDWELL COMMUNITY )<br>COLLEGE,[1] )<br>      Defendants. )<br>_____ ) | Memorandum and Order |

**THIS MATTER** is before the Court on motions to dismiss filed on behalf of Defendants Appalachian State University ("ASU") and the Trustees of Caldwell Community College & Technical Institute ("CCCTI"). In separate motions, Defendants seek dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Alternatively, Defendants move for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.

Plaintiff Frederick L. Blue ("Mr. Blue"), an African-American, was a student-employee of ASU from January 2007 through October 2007.[2] Mr. Blue, who is no longer an ASU student, performed clerical work for the university as part of its federal Work-Study program.

Mr. Blue has never been employed in any capacity by CCCTI.[3]

---

[1] Although Plaintiff names "Caldwell Community College" as a Defendant, the actual corporate legal entity Plaintiff attempts to sue is the "Trustees of Caldwell Community College & Technical Institute" or "CCCTI." (Def. CCCTI's Mem. In Supp. MTD at 1, n. 1.)

[2] Mr. Blue resigned his ASU work-study position on or about October 2007. (Pl.'s Exh. 4)

[3] Mr. Blue confirms that CCCTI was never his "employer." (Document #19 / Pl.'s Response, 1) ("I was never employed by Caldwell Community College and that is not my argument.") However, in another filing, Mr. Blue implies that because ASU and CCCTI are both part of the State of North

In 2007, Mr. Blue commenced a cause of action against ASU and CCCTI alleging that ASU and CCCTI employees engaged in employment discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* (*See Blue v. Appalachian State University, et al.*, WDNC Civil Docket No.: 5:07CV108-RLV) ("*Blue I*"). The facts described in *Blue I* were as follows:

> On February 12, 2007, Blue was working at ASU when a CCC employee visited ASU for the purpose of picking up mail. Within earshot of Blue, the CCC employee asked an ASU secretary, "Are we going to picnick (sic) a nigger today?" (Compl. 4.) Blue alleges that the ASU secretary responded by saying, "I guess we are." Id. Despite complaints made to other ASU employees, Blue avers that "to the best of my knowledge no corrective action was taken to correct the racially hostile environment." (Compl. 8.) However, Blue's complaint does not allege any further discriminatory comments or actions by ASU or its employees.

(5:07CV108-RLV / Document # 18) On these facts, this Court found that Mr. Blue failed to state a claim for racial discrimination under Title VII.[4] Mr. Blue's claims against Caldwell Community College were dismissed as CCC was never Mr. Blue's "employer" for purposes of Title VII. Thus, Mr. Blue's hostile work environment claim against both Defendants was

---

Carolina's higher education system that the two institutions can be treated as a single entity for purposes of his cause of action. (Compl. Document #1-1 / Mem. of Law, 1) (discussing the "bond / relationship" between the two educational institutions).

[4] After reciting the applicable law, this Court held:

Blue has failed to state a claim for racial discrimination under Title VII because he has failed to allege facts indicating that the racial hostility of his work environment was so severe as to alter the conditions of employment or to create an abusive atmosphere. The comment allegedly made by the CCC employee and the response of the ASU secretary were certainly offensive and inappropriate. However, Blue does not allege that this type of behavior ever occurred again, much less that it was pervasive. Furthermore, the offensive exchange was initiated by someone who was not even an employee of ASU, and the racial epithet was also uttered by this person. Although this statement -- and the secretary's response --were highly inappropriate, one isolated incident is insufficient to support Blue's claim of a racially hostile work environment.

2

dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

While Mr. Blue never sought to amend his Complaint in *Blue I*, one of his responsive filings (entitled "Memorandum of Law in Response to Motion to Dismiss and Address CHG") informed the Court that Mr. Blue had been terminated from employment since commencement of suit. (5:07CV108-RLV / Document #17) The Court explained: "If Blue wishes to file a separate action regarding this claim he may do so, but he must provide a more ample statement of his case and some facts in support." Any such claim based upon Mr. Blue's separation from employment was dismissed without prejudice.

In light of his previous lawsuit, Defendants now contend that the doctrine of *res judicata* precludes further consideration of Mr. Blue's new Complaint and supporting materials.

## II.

### A. Rule 12(b)(1)

A district court should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in the complaint are not true. Kerns v. United States, 585 F.3d 187, 192 (4th Cir.2009) (recognizing the different ways subject matter jurisdiction may be challenged by a defendant). "When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (*citing* Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982)). "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject

matter jurisdiction." Id.

The burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion to dismiss is on the plaintiff, the party asserting jurisdiction. Adams, 697 F.2d at 1219; Williams v. United States, 50 F.3d 299, 304 (4th Cir.1995).

The Court may look beyond the pleadings in order to resolve any issue concerning the existence of subject matter jurisdiction. *See generally*, Williams, 50 F.3d at 304 ("In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings.") *(internal citation omitted)*; Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir.1991) (*citing* Adams, 697 F.2d at 1219).

**B. Rule 12(b)(6)**

While a complaint need not contain detailed factual allegations in order to survive a 12(b)(6) motion, the plaintiff must plead enough to give the defendant "fair notice" of the claim and "the grounds upon which it rests . . . ." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (*quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957)). As the Supreme Court explained in Twombly, a complaint survives Rule 12(b)(6) if it alleges "enough facts to state a claim that is plausible on its face." Id. at 1974; St. Germain v. Howard, 2009 WL 117944, *2 n. 2 (5th Cir. 2009) ("plausibility standard" articulated in *Twombly*); *but see* Anderson v. Sara Lee Corp., 508 F.3d 181, 188 n. 7 (4th Cir.2007); Blackburn v. Calhoun, 2008 WL 850191, *3 (N.D. Ala.)) (*Twombly* retired that "no set of facts" standard). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

4

It is well established that when conducting a Rule 12(b)(6) analysis, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (*citing* Twombly, 127 S.Ct. at 1965.); G.E. Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). However, "conclusory allegations and unwarranted deductions of fact are not admitted as true . . . ." Blackburn, 2008 WL 850191, *3 (*internal citations omitted*). A plaintiff must do more than allege "a legal conclusion couched as a factual allegation." Twombly, 127 S.Ct. at 1965 (*quoting* Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A court ruling on a Rule 12(b)(6) motion may consider documents outside of the pleadings so long as the documents are integral to the complaint, explicitly relied on in the complaint, and their authenticity is not challenged.[5] *See* Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); In re Cree, Inc. Securities Litig., 333 F. Supp. 2d 461, 469 (M.D.N.C. 2004); Tatum v. R.J. Reynolds Tobacco Co., 294 F. Supp. 2d 776, 781 (M.D.N.C. 2003), *rev'd on other grounds*, 392 F.3d 636 (4th Cir. 2004).

### III.

The first issue presented is whether *res judicata* bars the instant civil action. Although couched by the parties in terms of Rule 12(b)(1), *res judicata* is an affirmative defense and is treated as a basis for dismissal under Rule 12(b)(6). *See* Davani v. Virginia Dept. of Trans., 434 F.3d 712, 720 (4th Cir.2006) (*res judicata* or claim preclusion challenge is to be considered pursuant to Rule 12(b)(6)); Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir.2000) (an affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) "only if it clearly appears on the

---

[5] Although the term pleading can be defined broadly, the "main pleadings are the plaintiff's complaint and the defendant's answer." Black's Law Dictionary 1173 (7th ed. 1999).

face of the complaint ....") (*internal citations omitted*).

The term *res judicata* can be used to describe two discrete preclusive doctrines: *res judicata* and collateral estoppel.[6] Baker v. Gen. Motors Corp., 522 U.S. 222, 233 n. 5 (1998). "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata ... encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes."" Pueschel v. United States, 369 F.3d 345, 354 (4th Cir.2004) (*quoting* Brown v. Felsen, 442 U.S. 237, 131 (1979)); Allen v. McCurry, 449 U.S. 90, 94 (1980).

The doctrine of *res judicata* (or "claim preclusion") precludes a party from bringing a claim that has already been "litigated to a final judgment by that party ... and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action."" Ohio Valley Envtl. Coalition v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir.2009) (*quoting* 18 James Wm. Moore et al., Moore's Federal Practice §131.10(1)(a) (3d ed. 2008)); Montana v. United States, 440 U.S. 147, 153 (1979). "To establish a *res judicata*

---

[6] As explained by the Fourth Circuit in Saudi v. V. Ship Switzerland, S.A.,

> The capacious term "*res judicata*," which is Latin for "a matter adjudged," can be used to refer both to "claim preclusion," under which an earlier action between parties will bar later actions between the same parties or their privies with respect to the same occurrence involved in the first action, or to "issue preclusion" (also known as "collateral estoppel"), under which the actual determination of a litigated issue in one proceeding will bar the relitigation of that same issue in a later proceeding by a party which had a full and fair opportunity to litigate it in the earlier proceeding. The term "res judicata" is often used, however, and perhaps most commonly used, in a narrower sense to denote only "claim preclusion" as distinguished from "issue preclusion."

Saudi v. V. Ship Switzerland, S.A., 93 Fed.Appx. 516, 520 n 1 (4th Cir.2004) (*internal citations omitted*) (*unpublished*).

defense, a party must establish: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties ... in the two suits." Andrews, 201 F.3d at 524 (*internal citation omitted*).

In order to find that the second suit involves the same cause of action, it is not necessary to find that the plaintiff in the second suit is proceeding on the same legal theory advanced in the first suit. *See* Ohio Valley Envtl. Coalition, 566 F.3d at 210 (*internal citation omitted*). Rather, "[a]s long as the second suit "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment," the first suit will have preclusive effect." Id. (*internal quotations omitted*); Laurel Sand & Gravel, Inc. v. Wilson, 510 F.3d 156, 162 (4th Cir.2008) ("The test for deciding "whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.' ") (*internal citations omitted*).

"[W]hen entertaining a motion to dismiss on the ground of *res judicata*, a [C]ourt may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." Andrews, 201 F.3d at 524, n. 1 (*internal citations omitted*).

**A. Alleged Hostile Work Environment**

With respect to Mr. Blue's Title VII hostile work environment claim, the *res judicata* criteria are met. In *Blue I*, the Court rendered final judgment on the merits of this claim, finding that the facts alleged by Mr. Blue did not satisfy either the "severe" or "pervasive" requirement. In addition, a comparison of the *Pro Se* Complaints in *Blue I* and *Blue II*, construed most liberally, reveals that Mr. Blue asserts an identical set of undisputed facts and the same cause of

7

action in support of *Blue II*. (Compl. D,1) Both Complaints are based upon the same transaction, namely, the alleged racially discriminatory statement by the CCCTI employee who picked up mail from ASU for CCCTI on February 12, 2007. (Compl. C, 2; D,1) Both Complaints identify both ASU and CCCTI as the only Defendants. (Compl. B, 2 and 3) Accordingly, Mr. Blue's hostile work environment claim is barred by *res judicata* and must be dismissed.

### B. Alleged Wrongful / Constructive Discharge

Likewise, Mr. Blue fails to state a cognizable federal claim for wrongful discharge against ASU.[7] Plaintiff, who did not originally formally allege that he was subject to any adverse employment action, now appears to attempt to make out a wrongful or constructive discharge claim. (Compl., Attachment / 2-25-11 Mem. Of Law, 1) (The alleged hostile work environment "had gotten so bad that I[Plaintiff] had to quit ...."). This claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted for the reasons explained in *Blue I*, namely, the claim is devoid of the requisite factual allegations.[8]

The undersigned explained in *Blue I* that the conclusory wrongful discharge claim was presented without supporting factual allegations necessary "to provide context to the claim or to

---

[7] As noted in *Blue I*, CCCTI was not an "employer" of Mr. Blue for purposes of Title VII.

[8] *Res judicata* does not apply as to Mr. Blue's wrongful discharge claim since it was dismissed without prejudice in *Blue I* and no final judgment on the merits issued. A dismissal which is designated "with prejudice" is "normally an adjudication on the merits for purposes of res judicata." Dolgaleva v. Virginia Beach City Public Schools, 364 Fed.Appx. 820, 826 n. 5 (4th Cir.2010) (*quoting* Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 n. 8 (5th Cir.1993)).

give notice to the opposing party of the challenged conduct." (5:07CV108-RLV / M & O, 5-6). In *Blue II*, the Complaint itself, a standard fill-in-the-blank form, fails to mention a second cause of action altogether. The Complaint does not state anywhere that Mr. Blue was discharged, that he was forced to resign, or that he was terminated for alleged discriminatory reasons. Thus, in order to construe *Blue II* as encompassing a constructive discharge claim, the Court is obliged to look to multiple individual attachments to the Complaint (several of which pertain solely to the February 12, 2007 incident), which are presented without explanation or discussion. One example is a copy of an email, dated October 23, 2007, from Mr. Blue resigning his work-study position in the Library.[9] (Pl.'s Compl. Exh. 4) Mr. Blue makes no connection between the email resignation and any facts – leaving aside the presumed February 12, 2007 incident – that might have provided a discriminatory basis and causal link to his resignation.[10]

Likewise, Mr. Blue's other materials likewise do not bear upon a wrongful discharge claim. For instance, Plaintiff's Exhibit 9, dated August 6, 2008, references an employer's appeal by Appalachian Hospitality Management (C/O Boone Hampton Inn), apparently a subsequent employer of Plaintiff, concerning an application for unemployment benefits filed by Mr. Blue in 2008 with the Employment Security Commission. (Pl.'s Compl. Exh. 9) Plaintiff's Exhibit 10 documents activity relevant to Blue's automobile insurance policy through Allstate and / or

---

[9] It appears that Mr. Blue was transferred at some point after the February 12, 2007 incident from the Continuing Education work study assignment to the Library. The circumstances of this transfer are not detailed within the record.

[10] In combing through Mr. Blue's attachments, one might infer a vague thrust of his claims from correspondence written by ASU's Associate Vice Chancellor to Mr. Blue confidentially explaining ASU's investigation and findings. (Pl.'s Compl. Exh. 3) Without some word of confirmation in Mr. Blue's pleadings and materials, however, the record supports little more than speculation in this regard.

Direct General Corporation and refers to an improper equipment violation and two speeding convictions in 2008. (Pl.'s Compl. Exh. 10)

Finally, Mr. Blue never exhausted his adminstrative remedies regarding an alleged wrongful discharge. Mr. Blue's resignation occurred on October 23, 2007 – nearly five months after the filing of his original EEOC complaint. In the *Blue II* Complaint, Mr. Blue only references the prior EEOC charge of May 27, 2007. (Compl. C,3) There is nothing in the record to suggest that Mr. Blue ever submitted a subsequent EEOC complaint following receipt of the June 2007 right-to-sue letter.[11] Accordingly, failure to exhaust administrative remedies provides an independent basis for dismissal. *See generally,* Malghan v. Evans, 118 Fed. Appx. 731, *3 (4th Cir.2004) (*unpublished*) (*citing* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) and Young v. National Ctr. for Health Serv. Research, 828 F.2d 235, 237-38 (4th Cir.1987)) (constructive discharge is a discrete discriminatory act requiring administrative exhaustion).

For all of these reasons, Plaintiff's wrongful or constructive discharge claim is dismissed with prejudice for failure to state a claim upon which relief can be granted.[12]

---

[11] The same June 29, 2007 "Notice Of Suit Rights" is attached to the *Blue II* Complaint as Plaintiff's Exhibit 5.

[12] This claim could also be dismissed properly pursuant to Rule 56 since Plaintiff was provided an opportunity to submit any "evidence" in support. In any event, absent a showing that he was working in a hostile work environment, it is unlikely that Mr. Blue would be able to establish constructive discharge.

## IV.

**IT IS, THEREFORE, ORDERED** that Defendants' Motions to Dismiss (Documents ##9, 12) are both hereby **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) consistent with the terms on the instant Memorandum and Order. Accordingly, Plaintiff's Complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED** that Plaintiff's Motions (Documents ##11,15) are **DENIED as moot** and, in any event, are without merit.[13]

Signed: January 24, 2012

Richard L. Voorhees
United States District Judge

---

[13] Mr. Blue asked that a judgment of default be entered against ASU because ASU allegedly failed to file a timely response to the Complaint. However, Mr. Blue never properly served ASU and default is improper where service of process is insufficient. (Document #17 / Larry Decl. ¶¶3-5)